UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN CHRISTOPHER EATON, *et al.*,

    Plaintiffs,

v.

ASCENT RESOURCES-UTICA, LLC,

    Defendant.

Case No. 2:19-cv-03412
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

This matter is before the Court on Defendant Ascent Resources–Utica, LLC's Motion to Modify Class Definition or Compel Arbitration. (Mot., ECF No. 74.) Plaintiffs Brian and Cynthia Eaton and Cunningham Property Management Trust opposed that Motion (Opp., ECF No. 82) and Ascent replied (Reply, ECF No. 87). For the reasons below, the Court **GRANTS** Ascent's Motion to the extent it requests a modification of the class definition.

**BACKGROUND**

This case involves two consolidated lawsuits brought by Brian and Cynthia Eaton, and Cunningham Property Management Trust, both of whom are landowners and mineral rights owners who allowed Ascent to produce oil and natural gas from their properties pursuant to an oil and gas lease. (ECF No. 17.) Plaintiffs as well as the class assert Ascent systematically underpaid them royalties on their leases. (ECF No. 52, PageID 1293.)

    **I.**    **The Cunningham Property Management Trust Lawsuit**

Cunningham initiated its lawsuit first by filing its complaint on October 5, 2016. (*Cunningham Prop. Mgmt. Trust v. Ascent Resources, LLC et al.*, Case No. 2:16-cv-0957,

1

"*Cunningham*", ECF No. 1.) Cunningham alleged that Ascent systematically underpaid royalties owed to Cunningham and a putative class. (*Cunningham*, ECF No. 1, ¶ 1.) Ascent then moved to dismiss the complaint (and then the amended complaint) for failure to state a claim. (*Id*., ECF Nos. 14, 22.) Ascent argued that Cunningham did not satisfy a condition precedent under the terms the lease before suing, by failing to give Ascent notice and an opportunity to cure. (*Id*., ECF No. 22, PageID 312.) Relevant to the instant Motion, Ascent did not argue that Cunningham should have arbitrated its claims before suing, nor did Ascent move to compel arbitration. (*Id*.)

The case was then stayed for approximately one year to give Ascent notice and an opportunity to cure the underpaid royalties under the terms of the oil and gas lease. (*Id*., ECF Nos. 32, 33.) Once the stay was lifted, Ascent filed a supplemental motion to dismiss Cunningham's complaint, which the Court granted in part and denied in part (*Id.*, ECF No. 40.) Once again, Ascent did not raise as grounds for dismissal, or as grounds to stay the case, the arbitration clauses in the leases. (*Id.*) After the Court denied the motion to dismiss in part, Ascent filed its answer and affirmative defenses which did not mention that leases of the putative class may contain binding arbitration agreements. (*Id.*, ECF No. 46.)

II.     **The Eaton Lawsuit**

Brian and Cynthia Eaton filed their complaint in the Court of Common Pleas of Belmont County, Ohio in August 2019. (*Eaton, et al. v. Ascent Resources-Utica, LLC*, Case No. 2:19-cv-3412, "*Eaton*", ECF No. 2.) Ascent removed that case to this Court (*Eaton*, ECF No. 1), and soon after filed its answer and affirmative defenses. (*Id.*, ECF No. 7.) Ascent raised several affirmative defenses but, relevant to the instant Motion, did not mention any binding arbitration provisions under the Eatons' lease. (*Id.*, ECF No. 7, PageID 140–41.)

2

### III. Consolidated Cases

In July 2020, the Court granted the Eatons' motion to consolidate its case with the Cunningham case and ordered Cunningham and the Eatons to file a combined amended complaint. (*Eaton*, ECF Nos. 17, 18.) Ascent then answered the amended and consolidated complaint (*Id.*, ECF No. 22) and moved to dismiss (*Id.*, ECF No. 23). Ascent did not raise an affirmative defense, or move to dismiss, based on the arbitration clauses. (*Id.*, ECF Nos. 22, 23.)

#### A. Class Certification

In January of 2021, Plaintiffs moved to certify the class. (*See* ECF No. 37.) The Court certified the following class:

> All persons or entities (including their predecessors and successors-in-interest) who have received, or who are entitled to receive, royalty payments from natural gas or oil wells located in Ohio, who were paid royalties by Ascent at any time since October 1, 2014, and who fit into one [of five] subclasses.

(ECF No. 52, PageID 1305–06.) With the exclusions below:

> Excluded from the Class and each Subclass are Ascent, any of its affiliates, parents, subsidiaries, officers, directors, employees, legal representatives, successors, and assigns, and any entity in which Ascent has a controlling interest, as well as that entity's officers, directors, employees, legal representatives, successors, and assigns, in addition to the judicial officers and their immediate family members and court staff assigned to this lawsuit. Also excluded are those persons or entities whose royalties are paid per an overriding royalty interest, or those with working interests.

(*Id.*)

When opposing class certification, Ascent argued that Plaintiffs had not established the Rule 23 requirements. (ECF No. 52, PageID 1314–15.) Although the representative Plaintiffs' leases did not include arbitration clauses, several of the putative class members' leases did include such clauses. (*Id.*) Ascent for the first time argued that the presence of the arbitration clauses caused individual issues to predominate over common questions of law or fact. (*Id.*) The Court disagreed and held that the presence of arbitration clauses in some of the class members

3

leases did not preclude class certification. (*Id.* at PageID 1315.) This Court explained that issues related to the arbitration provisions could be resolved later "through the creation of subclasses or the elimination of certain members of the class." (*Id.*)

### B. Sixth Circuit Denied Ascent's Interlocutory Appeal

Ascent then petitioned the Sixth Circuit to file an interlocutory appeal, challenging this Court's Order granting class certification. (Notice of Petition to Appeal, ECF No. 55.) Ascent argued that this Court committed a reversible error when it held that individual issues did not predominate based on the wording of class members' individual contracts. (Sixth Circuit Opinion, ECF No. 58, PageID 1333.) Ascent believed this Court erred in concluding that the class could later be amended to exclude class members whose leases contained arbitration clause or to create a subclass of those members. (*Id.*) The Sixth Circuit disagreed with Ascent and denied its petition to appeal, reasoning that the arbitration clauses did not create individual issues that predominate over common questions. (*Id.* at PageID 1334.)

After the Sixth Circuit's decision, Ascent conducted an individual lease review to identify leases of absent class members that contain arbitration provisions. (Mot., PageID 1430.) Ascent has since completed that individual lease review and states that it found 4,408 leases in the certified class that contain binding arbitration provisions. (*Id.*; *see also* ECF 74-1.) Now, Ascent moves to modify the class definition to exclude class members with leases containing contractual language requiring them to arbitrate claims against Ascent. (Mot., PageID 1429.) In the alternative, Ascent seeks to compel arbitration and dismiss the claims of class members who have leases with an arbitration clause. (*Id.* at PageID 1431.)

4

## ANALYSIS

Ascent argues that the Court must modify the certified class definition to exclude from the class any members who signed arbitration agreements consenting to arbitrate any legal disputes with Ascent. (Mot., PageID 1432.) Plaintiffs argue that Ascent waived its right to enforce the arbitration clauses and compel arbitration by litigating this case on the merits for several years. (Opp., PageID 1776.) Thus, before the Court can evaluate whether to modify the class definition, the Court must first determine whether Ascent waived its right to arbitration.

### I. Waiver of the Right to Arbitration

A strong federal policy favoring the enforcement of arbitration agreements discourages courts from finding that a party waived its right to arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148/3377, 2023 U.S. App. LEXIS 2951, at *6 (6th Cir. Feb. 6, 2023). But the Supreme Court clarified in *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022), that the purpose of the policy favoring arbitration was not to make arbitration agreements more enforceable than other contracts. *Id.*

As with other contractual rights, courts can refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived any such right. *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th Cir. 2022); *Thermo Credit, LLC v. DCA Servs., Inc.*, 755 F. App'x 450, 456 (6th Cir. 2018) (defining waiver as "a voluntary relinquishment of a known right"). The Sixth Circuit has found that a party waives the right to compel arbitration when it "tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement" or "delay[s] its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir.

5

2010). But the actual prejudice prong of the Sixth Circuit's test above was abrogated in part by the Supreme Court's recent decision in *Morgan*, in which the Court reasoned that "the usual federal rule of waiver does not include a prejudice requirement." *Morgan*, 596 U.S. at 419.

Often courts refuse to compel arbitration when a party seeking to enforce an arbitration agreement actively participated in the litigation on the merits before asserting its right to arbitrate. *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (reasoning that arbitration was designed to avoid court process, thus a party acts inconsistently with its right to arbitrate by insisting on court process). The more a party participates in the litigation before asserting the right to arbitrate, the more likely it is that the party waived its right. *See Konica Minolta Bus. Solutions, U.S.A. v. Allied Office Prods., Inc.*, 2006 U.S. Dist. LEXIS 93640 (S.D. Ohio, Dec. 27, 2006) (Graham, J.) (analyzing the participation required to waive the right to arbitrate, including whether the party filed responsive pleadings or a counterclaim without asserting the right to arbitrate, participated in discovery, or filed pretrial motions).

One exception to that rule occurs in class actions when a party participates in the litigation without moving to compel arbitration before the class is certified. *Geiger v. Charter Communs. Inc.*, No. CV 18-158-DMG (GJSx), 2019 U.S. Dist. LEXIS 228458, at *4 (C.D. Cal. May 13, 2019) (finding no waiver because moving to compel absent class members to arbitration before class certification would be futile). Until the class is certified, proposed new members of the class are not parties to the action who could be compelled to arbitrate. *Id.*; *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 802 (N.D. Ohio 2007) ("proposed new plaintiffs are not current parties to the action prior to a ruling on certification"); *Taylor v. Pilot Corp.*, No. 14-cv-2294-SHL-tmp, 2016 U.S. Dist. LEXIS 191726, at *8 (W.D. Tenn. Mar. 3, 2016) (same); *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 U.S. Dist. LEXIS 17327, at

*24 (E.D. Mich. Feb. 13, 2012) (finding that the relation back doctrine does not apply in class actions because the putative class members are not parties before class certification).

Here, Ascent asserted its right to compel arbitration when it opposed Plaintiffs' motion for class certification. (ECF No. 41, PageID 1072, 82, 89–90.) At the time the motion for class certification was filed, the case had been litigated for over four years. Cunningham filed its complaint in 2016. (*Cunningham*, ECF No. 1.) Ascent moved to dismiss the complaint, as well as the amended complaint, but did not make arguments about binding arbitration clauses. (*Id.*, ECF Nos. 14, 22.) When Ascent later answered the complaint, it did not plead arbitration as an affirmative defense. (*Id.*, ECF No. 46.) The same is true for the Eatons' complaint. (*Eaton*, ECF No. 7, PageID 140–41.) When the cases were consolidated, Ascent had another opportunity to respond but did not raise arbitration as an affirmative defense. (*Id.*, ECF Nos. 22, 23.)

If this were not class litigation, Ascent's active litigation on the merits of the case for over four years would be inconsistent with a reliance on a right to arbitration. *See Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009) (recognizing waiver when a party fails to plead arbitration as an affirmative defense and participates in the litigation for almost a year without asserting its right). But here, the representative Plaintiffs did not have arbitration provisions in their leases. (Mot., PageID 430.) Of course Ascent could have begun investigating the leases when it learned Cunningham was bringing the litigation on behalf of a putative class. But until the class was certified, the representative Plaintiffs were the only parties to the action. *E.g.*, *Barnes*, 473 F. Supp. 2d at 802. The putative class members with arbitration clauses in their leases did not become parties until the class was certified. Ascent's motion to compel was timely given the procedural posture of the litigation.

7

Plaintiffs argue that Ascent acted inconsistently with a reliance on a right to arbitrate by continuing to litigate the case and engage in discovery even *after* class certification and the denial of Ascent's petition to appeal. (Opp., PageID 1791, 95.) The Sixth Circuit denied Ascent's petition to appeal on June 23, 2022. (ECF No. 58.) Plaintiffs contend that Ascent then engaged in additional discovery and motions practice for six months before filing this motion to modify the class definition or compel arbitration. (Opp., PageID 1795.) But the only motion on the merits filed between the denial of Ascent's petition to appeal and this motion to modify the class definition was a motion for partial summary judgment filed by Plaintiffs. (*See* ECF No. 71.) Ascent filed a single motion to extend the deadlines to issue class notice (ECF No. 73), but otherwise did not actively participate in litigating the merits of the case. *See Solo*, 947 F.3d at 975 (underscoring the significance of litigating on the merits to waive a right to arbitrate).

Accordingly, Ascent's failure to raise arbitration against the unnamed members of the class until class certification was not so inconsistent with its assertion of the right to arbitrate that waiver must be found. Because the Court finds that Ascent did not waive its right to arbitrate, the Court next must determine whether the class definition needs modified.

II.     **Motion to Modify the Class Definition**

Ascent moves to modify the class definition based on post-certification evidence that a significant number of the class members agreed to arbitrate their claims against it. (Mot., PageID 1432–34.) Because representative Plaintiffs did not sign arbitration agreements, Ascent argues the representative Plaintiffs are in a different legal position than a large portion of the class members such that their claims are no longer typical of the class. (*Id.* at PageID 1435–36.) Without comparable arbitration clauses, Ascent reasons that the representative Plaintiffs cannot adequately represent the unnamed class members. (*Id.*) If the class definition is not modified to

exclude the class members with arbitration clauses, Ascent argues individual questions about the enforceability of each oil and gas lease will predominate over common questions of law or fact. (*Id.* at PageID 1437.) Therefore, Ascent proposes the following amendment to the exclusions portion of the class definition:

> **Exclusions:** Excluded from the Class and each Subclass are Ascent, any of its affiliates, parents, subsidiaries, officers, directors, employees, legal representatives, successors, and assigns, and any entity in which Ascent has a controlling interest, as well as that entity's officers, directors, employees, legal representatives, successors, and assigns, in addition to the judicial officers and their immediate family members and court staff assigned to this lawsuit. Also excluded are those persons or entities whose royalties are paid per an overriding royalty interest, or those with working interests, ***or those whose leases contain governing arbitration clauses***.

(*See* ECF No. 74-2, PageID 1759) (emphasis added).

Plaintiffs devote most of their response in opposition to Ascent's motion arguing that Ascent waived its right to arbitrate. (*See* Opp.) Outside of their waiver arguments, Plaintiffs maintain that they remain able to adequately represent the class members with arbitration agreements. (*Id.* at PageID 1793.) The representative Plaintiffs need not be the same in all respects to the class members to protect their interests. (*Id.*) Plaintiffs note that the Court already determined that the class suffered the same injury from the same course of conduct. (*Id.*)

The same Rule of Federal Procedure that empowers a court to certify a class action, also empowers it to change that certification before final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("[a]n order that grants or denies class certification may be altered or amended before final judgment"). District courts retain significant discretion to modify class definitions after certification to ensure that the class continues to satisfy the Rule 23 requirements. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (noting that a class certification order "is inherently tentative"); *Binta B. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013) (reasoning that a "district

9

court's responsibilities with respect to Rule 23(a) do not end once the class is certified"). The court may modify the class or establish subclasses as appropriate in response to developments in the litigation. *Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2003 U.S. Dist. LEXIS 25459, at *17 (S.D. Ohio Dec. 16, 2003) (Marbley, J.).

Courts however should only exercise their discretion to modify the class definition when good cause necessitates modification because parties rely on the class certification to conduct discovery, prepare for trial, and engage in settlement discussion. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 459–60 (N.D. Ohio 2014) (citations omitted). Good cause arises and demands reconsideration of a previous certification order when new evidence becomes available, there are changes in the controlling substantive or procedural law, or there is a need to correct an error or prevent manifest injustice. *Id.*; *see also Stephenson v. Fam. Sols. of Ohio, Inc.*, 499 F. Supp. 3d 467, 483 (N.D. Ohio 2020).

The Court finds that good cause exists to modify the class definition to exclude members of the class whose leases included arbitration agreements. Ascent's individual lease review results indicating 4,408 leases include arbitration provisions is new evidence that was not available to the Court before class certification. (*See* ECF No. 74-1.) The presence of arbitration clauses in the leases of a significant number of potential class members, but not the representative Plaintiffs, threatens the typicality and adequacy requirements of Rule 23(a).[1]

---

[1] To be certified as a class, the claims of the representative plaintiffs must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A class representative's claim is typical if it arises from the same event, practice, or course of conduct, or is based on the same legal theory. *Stephens v. ADS All. Data Sys., Inc.*, No. 2:20-cv-2152, 2024 U.S. Dist. LEXIS 38280, at *5 (S.D. Ohio Mar. 5, 2024) (Watson, J.). The class representative must also be able to adequately represent the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997).

10

Many courts have found that the presence of arbitration agreements in some, but not all, class member contracts may destroy the Rule 23(a) typicality and adequacy requirements for a class action. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861–62 (D. Md. 2013); *Johnson v. Lexington*, Civil Action No. 5:19-064-DCR, 2020 U.S. Dist. LEXIS 114505, at *16 (E.D. Ky. July 1, 2020) (evaluating whether potential members of the class are subject to arbitration agreements destroys commonality and typicality); *Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95, 122–24 (E.D.N.Y. 2019) (denying certification because most of the proposed class was subject to a potentially valid arbitration provision that the named plaintiff opted out of); *Renton v. Kaiser Found. Health Plan, Inc.*, Civ. No. C00-5370RJB, 2001 U.S. Dist. LEXIS 20015, at *16 (W.D. Wash. Sept. 24, 2001) (named plaintiff stood in a different position legally than many class members because she was not subject to an arbitration agreement); *Forby v. One Technologies, LP*, Civil Action No. 3:16-CV-856-L, 2020 U.S. Dist. LEXIS 128913, at *31 (N.D. Tex. July 22, 2020) ("putative class members are likely bound by the arbitration clause at issue, unlike Ms. Forby, which precludes her ability to certify a class").

The Eatons' and the Cunningham's leases do not contain binding arbitration clauses, but many of the class members leases do. (Mot., PageID 1433; *see also* ECF No. 74-1.) The arbitration clauses all require the parties to resolve any dispute about performance under the lease through arbitration. (ECF No. 74-1, describing the 14 different lease clauses.) The claims of all class members arise out of the same practice or course of conduct that would seemingly be covered by the clauses—Ascent's alleged underpayment of royalties. (*See* ECF No. 52, PageID 1311.) But the presence of arbitration agreements may change the legal theories or defenses on which certain class members rely when litigating their case. *See Jensen*, 372 F. Supp. 3d at 122 (finding that named plaintiff opted out of arbitration agreement, and thus had different defenses

11

that were inapplicable to the putative class). The representative Plaintiffs cannot adequately defend against Ascent's claimed right to arbitrate, because they themselves do not have arbitration agreements in their leases. *See Forby*, 2020 U.S. Dist. LEXIS 128913, at *31 (finding the typicality and adequacy requirements not satisfied because unlike the representative plaintiff, the putative class members are bound under the arbitration agreement.)

Without modification, the class may be vulnerable to decertification. The Court finds it preferable to amend the class and exclude members with arbitration agreements, rather than risk decertification of the entire class. *In re Urethane Antitrust Litig.*, No. MDL No. 1616, 2013 U.S. Dist. LEXIS 69784, at *34 (D. Kan. May 15, 2013) (avoiding decertification where a "potentially proper class exists and can easily be created"). While Plaintiffs are correct that the class members need not be the same in all respects (*see* Opp., PageID 1793), here the representative Plaintiffs stand in a different legal position than many of the class members who signed leases with arbitration provisions. The Court contemplated this possibility in its certification order and reserved the right to create subclasses or eliminate certain members of the class based on the presence of binding arbitration agreements. (ECF No. 52, PageID 1315.) Upon consideration of Ascent's individual lease review results, the Court finds that there is good cause to modify the exclusions portion of the class definition.

Ascent moved in the alternative to compel arbitration and dismiss the claims of class members with binding arbitration provisions. (Mot., PageID 1438.) Because the Court granted Ascent's motion to modify the class definition, and the members with arbitration clauses are no longer part of the class, the Court need not address Ascent's alternative position.

Ascent's motion to modify the class definition (ECF No. 74) is thus **GRANTED**. The Court redefines the class as follows:

> All persons or entities (including their predecessors and successors-in-interest) Who have received, or who are entitled to receive, royalty payments from natural gas or oil wells located in Ohio, who were paid royalties by Ascent at any time since October 1, 2014, and who fit into one or more of the following subclasses.
>
> **Subclass (a):** All persons or entities who have had deductions for "gathering" and "compression" expenses taken from royalty payments by Ascent.
>
> **Subclass (b):** All persons or entities who have had deductions for "processing" expenses taken from royalty payments by Ascent.
>
> **Subclass (c):** All persons or entities who have had deductions for "transportation" expenses taken from royalty payments by Ascent.
>
> **Subclass (d):** All persons or entities for which Ascent has classified the lessor as having a "market enhancement clause" lease who have had deductions for "processing" expenses taken from royalty payments by Ascent.
>
> **Subclass (e):** All persons or entities for which Ascent has classified the Lessor as having a "market enhancement clause" lease who have had deductions for "transportation" expenses taken from royalty payments by Ascent.
>
> **Exclusions:** Excluded from the Class and each Subclass are Ascent, any of its affiliates, parents, subsidiaries, officers, directors, employees, legal representatives, successors, and assigns, and any entity in which Ascent has a controlling interest, as well as that entity's officers, directors, employees, legal representatives, successors, and assigns, in addition to the judicial officers and their immediate family members and court staff assigned to this lawsuit. Also excluded are those persons or entities whose royalties are paid per an overriding royalty interest, or those with working interests, or those whose leases contain governing arbitration clauses.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant Ascent Resources–Utica, LLC's Motion as to the modification of the class definition. (ECF No. 74.) This case remains open.

**IT IS SO ORDERED.**

**4/4/2024**                                             **s/Edmund A. Sargus, Jr.**
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                                  **UNITED STATES DISTRICT JUDGE**