UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN CHRISTOPHER
EATON, *et al.*,

        **Plaintiffs,**

    v.

ASCENT RESOURCES-UTICA,
LLC,

        **Defendant.**

Case No. 2:19-cv-03412
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on a Motion for Partial Summary Judgment (ECF No. 71) filed by Plaintiffs Brian Christopher Eaton, Cynthia Eaton, and Cunningham Property Management Trust. Defendant Ascent Resources-Utica, LLC opposes the Motion (ECF No. 84), and Plaintiffs replied (ECF No. 86). For the reasons below, Plaintiffs' Motion for Partial Summary is **DENIED**. (ECF No. 71.)

## BACKGROUND

Ascent is an exploration and production company that contracts with landowners to drill for oil and natural gas on the leased properties. Plaintiffs are a class of such landowners. Ascent entered into hundreds of oil and gas lease agreements with Plaintiffs to extract oil and natural gas from the wells[1] placed on their properties, to sell downstream. In exchange, Ascent agreed to pay Plaintiffs royalties based on the proceeds of the sales from the oil and natural gas produced at each well. Each lease agreement determines whether Plaintiffs, or Ascent, are responsible for expenses

---

[1] An oil well is used to extract oil and natural gas from the ground. It consists of a wellbore (the hole drilled through the ground) and a wellhead (the surface equipment). *Grissoms, LLC v. Antero Res. Corp.*, 133 F.4th 605, 607 (6th Cir. 2025).

1

incurred after the oil and natural gas is extracted, but before it is sold—i.e., "post-production deductions." Plaintiffs assert that Ascent systematically underpaid them royalties by deducting excessive post-production costs from the proceeds of each well's production. (*See* ECF No. 52, PageID 1293.) Plaintiffs' partial motion for summary judgment is about who bears the burden of proving whether the deductions were reasonable. (*See* ECF No. 71.)

I. **The Class Action Complaint**

This case involves two consolidated lawsuits brought by Brian and Cynthia Eaton and Cunningham Property Management Trust, both of whom allowed Ascent to produce oil and natural gas from their properties under oil and gas leases. (ECF No. 17.) Plaintiffs' consolidated class action complaint alleges five causes of action. Plaintiffs first cause of action seeks an order for an accounting of the royalty payments and the methods of calculating those payments. (ECF No. 21, ¶ 138.) Second, Plaintiffs allege that Ascent breached the operative lease agreements by taking improper deductions from their royalties. (*Id.* ¶¶ 139–42.) Third, in the alternative to the breach of contract claim, Plaintiffs allege that Ascent has been unjustly enriched by retaining royalty payments that belong to Plaintiffs. (*Id.* ¶¶ 143–45.) Fourth, Plaintiffs assert that they relied upon fraudulent misrepresentations made by Ascent regarding their royalty payments. (*Id.* ¶¶ 146–57.) Fifth, Plaintiffs seek injunctive and declaratory relief to remedy the underpayments moving forward. (*Id.* ¶¶ 158–64.) The parties later agreed to dismiss Plaintiffs' fraud claim (Count Four), but Plaintiffs other claims remain pending. (ECF No. 96.)

Plaintiffs' breach of contract allegations differ based on the provisions of their lease agreements. The leases are grouped into three categories: "gross proceeds" leases, "net proceeds" leases, and "market enhancement clause" leases. (ECF No. 52, PageID 1294; *Eaton v. Ascent Res. — Utica, LLC*, No. 2:19-cv-3412, 2021 U.S. Dist. LEXIS 145585, at *4 (S.D. Ohio Aug. 4, 2021).)

2

The Eatons' lease falls into the "market enhancement clause" category because it contains the following clause prohibiting Ascent from deducting expenses incurred to transform the gas into marketable form:

> all oil, gas and other proceeds accruing to the Lessor[2] under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transportation, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted . . .

(ECF No. 21-1, PageID 256.)

The Cunningham leases are "net proceeds" leases because they allow Ascent to take deductions, and do not contain a market enhancement clause. (ECF No. 52, PageID 1294.) The Cunningham leases state that the Lessee (Ascent) agrees to:

> (B) To pay to the Lessor, as royalty for the gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eighth (1/8) of the wellhead price paid to Lessee per thousand cubic feet of such gas so marketed and used, . . .

(ECF Nos. 21-2, ¶ 5; 21-3, ¶ 5.) In other words, Ascent pays royalties based on a portion of the price of the oil or gas at the wellhead, before it processes or transports it. (*Id.*)

## II.  Cunningham Litigation

Before the cases were consolidated, this Court held that the Cunningham leases allowed Ascent to deduct post-production costs from royalty payments but only to the extent that the deductions were reasonable. *Cunningham Prop. Mgmt. Tr. v. Ascent Res. — Utica, LLC*, 351 F. Supp. 3d 1056, 1062–64 (S.D. Ohio 2018). In reaching this conclusion, the Court explained that there are two approaches adopted by state courts to calculate royalty payments—depending on

---

[2] Plaintiffs, who are leasing rights to another party to drill for oil and gas on their land, are the "Lessors" and Ascent, who is leasing rights to extract resources from the land, is the "Lessee."

when the value of the gas is determined. *Id.* at 1062. The "at the well" rule assumes that the location for computing royalty payments occurs at the wellhead. *Id.* This rule allows the oil company to deduct post-production costs, but requires those expenses be shared proportionately between the parties. *Id.* In comparison, the "marketable product" rule calculates the value of the gas, and the royalty payments owed, when the gas is made into marketable form. *Id.; see also Lutz v. Chesapeake Appalachia, LLC*, 71 N.E.3d 1010, 1013 (Ohio 2016) (Pfeifer, J., dissenting) ("*Lutz I*") (distinguishing the marketable product rule). The marketable product rule restricts the permissible post-production deductions, causing the oil company to pay most of the post-production costs. *Id.*

Rather than adhering to a single rule, under Ohio law, courts look to the words of the parties' contract—i.e., the oil and gas lease—to determine which rule applies. *Id.* (citing *Lutz I*, 71 N.E.3d at 1012). Because the Cunningham leases referred to the "wellhead price," this Court applied the at the well rule to compute royalty payments. *Id.* But the Court qualified Ascent's right to deduct expenses from the royalties by noting that "the taking of post-production expenses at an unreasonably high amount breaches the lease." *Id.* at 1063–64 (citing *Lutz v. Chesapeake Appalachia, LLC*, No. 4:09-cv-2256, 2017 U.S. Dist. LEXIS 176898, at *11 (N.D. Ohio Oct. 25, 2017) ("*Lutz II*")). Accordingly, the Court preserved Cunningham's breach of contract claim for the allegedly unreasonable deductions but dismissed Cunningham's allegations that Ascent breached the contract by taking deductions at all. *Id.* The parties later agreed to dismiss the remaining fraud clam. (*See* ECF No. 96.)

### III. The Consolidated Action

The Court then consolidated the cases. (ECF No. 17.) Plaintiffs filed an amended consolidated complaint adding the class action allegations. (ECF No. 21.) Ascent moved to dismiss

4

that complaint. (ECF No. 23.) In opposition to the motion to dismiss, Plaintiffs urged the Court to revisit the Opinion above and apply the marketable product rule requiring Ascent to bear the post-production costs. (ECF No. 27, PageID 383–84.) The Court declined the invitation to revisit its ruling and reiterated that "[t]he plain text of the [Cunningham's] royalty provision unambiguously references the value of the gas at the wellhead[.]" (ECF No. 45, PageID 1227, 1234; *Eaton v. Ascent Res. — Utica, LLC*, No. 2:19-cv-3412, 2021 U.S. Dist. LEXIS 42284, at *8 (S.D. Ohio Mar. 8, 2021).) In congruence with its prior Order, the Court granted Ascent's motion to dismiss Cunningham's breach of contract claim, and preserved the remaining breach of contract claim for unreasonably high deductions. (*Id.* at *12.)

Plaintiffs then moved to certify the class. (ECF No. 37.) The Court granted Plaintiffs' motion for class certification and modified the class definition to consist of one class and five subclasses. (ECF No. 52, PageID 1317.) Ascent petitioned for interlocutory appeal (ECF No. 55), and the Sixth Circuit denied Ascent's petition. (ECF No. 58.)

Ascent then moved in this Court to modify the class definition to exclude class members with leases containing arbitration clauses. (ECF No. 74.) The Court granted that motion, and modified the class definition as follows:

> All persons or entities (including their predecessors and successors-in-interest) who have received, or who are entitled to receive, royalty payments from natural gas or oil wells located in Ohio, who were paid royalties by Ascent at any time since October 1, 2014, and who fit into one or more of the following subclasses.
>
> **Subclass (a):** All persons or entities who have had deductions for "gathering" and "compression" expenses taken from royalty payments by Ascent.
>
> **Subclass (b):** All persons or entities who have had deductions for "processing" expenses taken from royalty payments by Ascent.
>
> **Subclass (c):** All persons or entities who have had deductions for "transportation" expenses taken from royalty payments by Ascent.

5

>**Subclass (d):** All persons or entities for which Ascent has classified the lessor as having a "market enhancement clause" lease who have had deductions for "processing" expenses taken from royalty payments by Ascent.
>
>**Subclass (e):** All persons or entities for which Ascent has classified the lessor as having a "market enhancement clause" lease who have had deductions for "transportation" expenses taken from royalty payments by Ascent.
>
>**Exclusions:** Excluded from the Class and each Subclass are Ascent, any of its affiliates, parents, subsidiaries, officers, directors, employees, legal representatives, successors, and assigns, and any entity in which Ascent has a controlling interest, as well as that entity's officers, directors, employees, legal representatives, successors, and assigns, in addition to the judicial officers and their immediate family members and court staff assigned to this lawsuit. Also excluded are those persons or entities whose royalties are paid per an overriding royalty interest, or those with working interests, or those whose leases contain governing arbitration clauses.

(ECF No. 107, PageID 2950–51.)

The subclasses above fall into two of the three categories of oil and gas leases discussed above: "net proceeds" leases (subclasses (a), (b), and (c)), and "market enhancement clause" leases (subclasses (d) and (e)). (ECF No. 52, PageID 1294; *Eaton v. Ascent Res. - Utica, LLC*, No. 2:19-cv-3412, 2021 U.S. Dist. LEXIS 145585, at *3 (S.D. Ohio Aug. 4, 2021).)

### IV. Plaintiffs' Motion for Partial Summary Judgment[3]

Plaintiffs move for partial summary judgment arguing that Ascent bears the burden of proving that the post-production deductions it took from royalties owed to subclasses (a), (b), (c) and (e) were reasonable. (ECF No. 71; *see also* ECF No. 124, PageID 3164 (clarifying that the motion applies to subclasses (a), (b), (c), and (e), but not (d).) Plaintiffs also urge the Court to "grant them partial summary judgment on their contractual accounting claim and order Ascent to

---

[3] Two other Partial Motions for Summary Judgment (ECF Nos. 85, 115) are pending before the Court and will be addressed in a forthcoming Opinion and Order. This Opinion and Order addresses only the Partial Motion for Summary Judgment filed by Plaintiffs (ECF No. 71) regarding the burden of proof and Plaintiffs' accounting claim.

6

provide a full accounting of all post-production expenses taken from royalties, including establishing why the deductions are reasonable." (*Id.* PageID 1383.)

Ascent opposes the Motion and argues that Plaintiffs ask the Court to impermissibly shift the burden of proof to Ascent to disprove Plaintiffs' breach of contract claim. (ECF No. 84, PageID 1803.) Ascent maintains that summary judgment on Plaintiffs' accounting claim is premature because Plaintiffs will obtain the information that they seek through discovery. (*Id.* PageID 1802.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (finding a genuine issue exists if the nonmoving party shows "significant probative evidence" that "there is [more than] some metaphysical doubt as to the material facts."). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Moore*, 8 F.3d at 340.

The moving party—here, Plaintiffs—bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323–24. The non-moving party—here, Ascent—then must present sufficient evidence from which a jury could reasonably find for them. *See Anderson*, 477 U.S. at 249. The court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## ANALYSIS

Plaintiffs cannot show as a matter of law that Ascent bears the burden of proving that the deductions from royalty payments owed to Plaintiffs were reasonable. As such, Plaintiffs partial motion for summary judgment on this issue is denied. Plaintiffs also fail to show that no genuine issue of material fact exists as to their accounting claim, so summary judgment on that claim is denied.

### I. Plaintiffs have the burden of proving Ascent breached the oil and gas leases.

Plaintiffs assert that Ascent breached the oil and gas leases by taking unreasonably high post-production deductions from their royalties. The question before the Court is not whether the post-production deductions were reasonable, but who bears the burden of proving that the deductions were reasonable. Plaintiffs argue that Ascent should carry the burden of proof and Ascent argues that Plaintiffs have the burden. Ascent has the better argument.

#### A. Ohio law suggests that Plaintiffs bear the burden of proof.

The parties agree that their dispute is governed by Ohio law. In Ohio, oil and gas leases are contracts. *Lutz I,* 71 N.E.3d at 1012 (explaining that the rights and remedies of the parties are determined by the terms of the written agreement). A claim that a party violated the terms of an oil and gas lease is treated as a breach of contract claim. *Id.*

8

"To recover for breach of contract under Ohio law, a breach plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Atlas Indus. Contractors, LLC v. In2gro Techs.*, No. 2:19-cv-2705, 2021 U.S. Dist. LEXIS 56630, at *13 (S.D. Ohio Mar. 25, 2021) (Morrison, J.) (citing Ohio law). "Both parties focus on the breach element. 'A party breaches a contract if he fails to perform according to the terms of the contract or acts in a manner that is contrary to it provisions.'" *Id.* (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

The first step to determine which party bears the burden of proof is to look to the terms of the contract and "ascertain the intent of the parties as expressed" therein. *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 771 (S.D. Ohio 2016) (Black, J.) (citations omitted). "Generally, contracts should be construed in a manner to give effect to the intentions of the parties." *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 900 (Ohio 1999) (citation omitted). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (Ohio 1984) (citation omitted). "The fact that the parties fail to specifically define a term within the contract does not make the term ambiguous." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004) (citation omitted) (analyzing the ordinary meaning of the terms in the context of the entire instrument).

Here, the leases do not resolve who has the burden of proof. The royalty clauses of the Eatons' and the Cunningham leases convey how royalties should be calculated but say nothing about which party must show whether deductions from those royalties are reasonable. The Eatons' royalty clause provides that "proceeds accruing to the Lessor [(Eatons)] . . . shall be without deduction . . . to transform the product into marketable form; however, any such costs which result

9

in enhancing the value of the marketable oil, gas or other products to receive a better price may be deduced." (ECF No. 21-1, PageID 256 (market enhancement clause).) The Cunningham leases state that Ascent (Lessee) agrees to pay Plaintiffs (Lessor) "the sum of one-eighth (1/8) of the wellhead price paid." (ECF Nos. 21-2, ¶ 5; 21-3, ¶ 5.) Nevertheless, just because the leases do not define who bears the burden of proof does not make the term ambiguous, or raise an issue of fact.

Without contractual language on point, the Court next looks to "the substantive law of the forum state, Ohio, in accordance with the controlling decision of its highest court." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (citation omitted). "If the highest court has not yet addressed the precise issue at hand, '[this Court] must predict how the [state] court would rule by looking to all the available data,' including intermediate appellate decisions." *Id.* (citing *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012)).

Ohio courts have not addressed the precise question before the Court. But in the context of royalty disputes, Ohio courts have held that the burden of proof in oil and gas lease cases is "not controlled by substantive oil and gas law, but, rather, by civil procedure." *Pfalzgraf v. Miley*, 116 N.E.3d 893, 897 (7th Dist. Ohio Ct. App. 2018); *see also Mauger v. Positron Energy Res., Inc.*, 2014-Ohio-4613, ¶ 40 (5th Dist. Ohio Ct. App. 2014) (same) (citing *Positron Energy Res., Inc. v. Weckbacher*, 2009-Ohio-1208, ¶¶ 18–19 (4th Dist. Ohio Ct. App. 2009)). Civil procedure dictates that the party asserting the claim carries the burden of proof. *See Jacobs v. Dye Oil, LLC*, 147 N.E.3d 52, 64 (7th Dist. Ohio Ct. App. 2019). Therefore, as in any other civil case, the party who asserts a breach of an oil and gas lease carries the burden of proof. *Pfalzgraf*, 116 N.E.3d at 897 (concluding that the trial court impermissibly shifted the burden of proof to the defendant to prove that the well was producing paying quantities and thus the lease had not expired); *Jacobs*, 147

10

N.E.3d at 64 (explaining that the plaintiff-appellant bears the burden of proving that a well is not producing in paying quantities).

A leading oil and gas treatise confirms that generally the plaintiffs bear the burden of proving a breach of contract in disputes involving royalty payments. *See Tennant v. Range Res.– Appalachia, LLC*, 561 F. Supp. 3d 522, 533 (W.D. Pa. 2021) (citing 3 Williams & Meyers, Oil and Gas Law § 650.3 (2020) (collecting cases)). That treatise explains:

> In the event of dispute between a royalty owner or other nonoperator and an operator concerning payments due the nonoperator, information pertaining to 'price,' 'value,' or 'proceeds' of the nonoperator's share of production may be more readily available to the operator than to the nonoperator. Nevertheless, by the weight of authority, the lessor or other nonoperating owner has the burden of proof as to such matter.

(*Id.*) Here, Ascent is the operator, or the party responsible for managing the well and paying royalties. Plaintiffs are the lessors, or nonoperating owners, who collect royalty payments. So even though Ascent may have more information than Plaintiffs about production costs, the burden remains on Plaintiffs to prove payments due in a royalty dispute.

Plaintiffs do not respond or distinguish this case law in their reply brief. (*Compare* ECF No. 84, PageID 1807–09 *with* ECF No. 86.) Instead, to salvage their argument that Ohio law supports placing the burden of proof on Ascent, Plaintiffs cite to *Hanna v. Shorts*, 125 N.E.2d 338 (Ohio 1999). (ECF No. 71, PageID 1396.) In that case, the landowner brought a declaratory judgment action against the oil company asserting that its lease should be declared expired based on the terms of the lease. *Id.* at paragraph one of the syllabus. The oil company counterclaimed seeking to extend the lease. *Id.* As the Court held, the oil company must affirmatively prove either (a) some express or implied agreement to extend the term beyond five years or (b) that the oil and gas was "produced in paying quantity from said land within and beyond said five-year period" or (c) that oil and gas could have been produced "if the acts of the lessor had not prevented or

11

interfered with such production." *Id.* In other words, the Court put the burden on the oil company to extend the lease, rather than the plaintiff to show it had expired. *See id.*

Plaintiffs argue that because the Supreme Court of Ohio placed the burden on the oil company, "*Hanna* is indicative of Ohio law shifting the burden when the knowledge is within the hands of the lessee." (ECF No. 71, PageID 1396.) But the Court did not shift the burden because of a knowledge disparity. It shifted the burden of proof because the oil company was asserting a counterclaim to extend the lease. The lease would have expired, absent the oil company proving to the contrary that it was or should be extended. A counterclaimant must prove the elements of their claim just as a plaintiff must prove the elements of its claim. Thus, *Hanna* does not suggest that Ascent bears the burden of disproving Plaintiffs' allegations.

The case law above reveals that although there is no Ohio case on point, if confronted with the question of who bears the burden of proving that royalties were underpaid, the case law suggests that the Supreme Court of Ohio would place that burden on the party asserting the breach of contract claim.

### B. Plaintiffs' arguments to the contrary do not change the Court's analysis.

To avoid summary judgment on burden shifting, Plaintiffs urge the Court to adopt the approach followed by other states including Colorado, Arkansas, Kansas, and West Virginia. (ECF No. 71, PageID 1389–96.) Ascent protests that these states all follow the marketable product rule and Ohio has not adopted that rule. (ECF No. 84, PageID 1809–11 (citing *Lutz II*, 2017 U.S. Dist. LEXIS 176898, at *17–18 (explaining that rather than adopting the at the well or marketable product rule, Ohio law looks to the language of the leases to determine which rule applies)). Ascent suggests that Plaintiffs are trying to relitigate whether the marketable product rule applies. (*Id.*)

12

The burden of proof on the reasonableness of post-production deductions is a separate issue from whether the at the well or the marketable product rule should apply. Regardless of which rule governs, all post-production deductions must be reasonable. *See Cunningham*, 351 F. Supp. 3d at 1064. Thus, the marketable product versus at the well debate is not instructive of the burden of proof question.

Because the cases cited by Plaintiffs apply the marketable product rule, those cases do not assist this Court in determining who has the burden of proving the reasonableness of the deductions. *See Garman v. Conoco, Inc.*, 886 P.2d 652, 661 (Colo. 1994) (holding that "[t]o the extent that certain processing costs enhance the value of an already marketable product the burden should be placed upon the lessee to show such costs are reasonable"); *Sternberger v. Marathon Oil Co.*, 894 P.2d 788, 800 (Kan. 1995) (explaining that Kansas applies the marketable product rule and once the marketable product is obtained, "[t]he lessee has the burden of proving the reasonableness of the costs"); *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1208 (Ok. 1998) (citing *Garman* and *Sternberger* and holding that the lessee bears the burden of showing that transportation costs are reasonable); *Wellman v. Energy Res., Inc.*, 557 S.E.2d 254, 265 (W. Va. 2001) (finding under the implied duty to market gas produced, the lessee must introduce evidence that the costs were actually incurred and were reasonable).

First, none of these cases is binding on this Court. Second, in each, the marketable product analysis is intertwined with the burden of proof analysis. Ohio has refused to adopt the marketable product rule. Therefore, the authorities offered by Plaintiffs do not change the Court's conclusion that if presented with the question, the case law indicates that Ohio's highest court would place burden upon Plaintiffs to assert a breach of the oil and gas leases.

Courts outside of this Circuit who have addressed the issue have also adopted the opposite approach from that advocated by Plaintiffs. The Western District of Pennsylvania, for example, has held that the burden of proof on a breach of contract claim in a royalty dispute stays with the royalty owner. *E.g.*, *Tennant*, 561 F. Supp. 3d at 533, *mot. for reconsideration denied*, 2021 U.S. Dist. LEXIS 209016 (W.D. Pa. Oct. 29, 2021); *see also Slamon v. Carrizo (Marcellus) LLC*, 654 F. Supp. 3d 405, 424 (M.D. Pa. 2023) (holding that the general rule in the oil and gas industry is that a lessor bears the burden of proof). The Court finds these cases more persuasive.

One could read Plaintiffs' Motion as arguing that the reasonableness of the post-production deductions is an affirmative defense to liability, excusing Ascent's obligation to perform under the leases. As the party raising an affirmative defense, the defendant normally bears the burden of proving an affirmative defense. *Atlas Indus. Contractors*, 2021 U.S. Dist. LEXIS 56630, at *15 (collecting cases under Ohio law). But Ascent is not justifying its purported failure to perform. Ascent argues that it never breached because it properly performed under the leases by deducting reasonable post-production costs from Plaintiffs' royalty payments. Since Ascent is not seeking an excusal for its failure to perform, the Court will not treat the reasonableness of the deductions as an affirmative defense. *Slamon*, 654 F. Supp. 3d at 424 (elaborating that because a defendant bears the burden of proof only when seeking an excusal of an obligation to perform, it is the plaintiff's burden to establish a breach of contract).

Finally, Plaintiffs' argument that the burden should shift to Ascent because the parties are not on equal footing is unpersuasive. (*See* ECF No. 71, PageID 1391–95.) Since Ascent controls the information about the methods for taking deductions from the royalty payments, Plaintiffs urge the Court to adopt the burden shifting framework applicable to accounting claims, to Plaintiffs' breach of contract claim. (*Id.*) To advocate for this approach, Plaintiffs cite cases that address

14

equitable accounting claims, not breach of contract claims based on an accounting. *E.g.*, *Rochow v. Life Ins. Co. of N. Am.*, 851 F. Supp. 2d 1090, 1093–94 (E.D. Mich. 2012) (describing the two-stage burden shifting framework in an equitable suit for an accounting).

The Court recognizes that the parties may not be on equal footing in terms of accessing or controlling information about deductions. *See SWN Prod. Co., LLC v. Kellam*, 875 S.E.2d 216, 231 (W. Va. 2022) (Hutchinson, J., concurring) ("[C]ritics of the marketable-product rule . . . assume that the production of oil and gas is a shared adventure by a lessor and a lessee. But the facts usually show that the lessor/land-and-mineral owners and lessee/oil-and-gas companies are not partners or on anything close to resembling an equal footing."). This power imbalance is better redressed through Plaintiffs' accounting claim, or through discovery, not Plaintiffs' breach of contract claim.

Plaintiffs assert: "Ascent offers no substantive reason *against* the burden shift." (ECF No. 86, PageID 2219 (emphasis added).) This sentence suffers from the same shortcoming as Plaintiffs' Motion—it is not Ascent's burden to refute the requested burden shift, nor is it Ascent's burden to disprove the alleged underpayment of royalties. It is Plaintiffs' burden to show why the Court should deviate from the general rule requiring a plaintiff to prove its breach of contract claim. Because they are unable to do so, Plaintiffs bear the burden of showing how Ascent breached the oil and gas leases.

The question before the Court is not what approach is best, but what approach Ohio's highest court would adopt given that there is no case directly on point. The cases cited by Plaintiffs do not establish that the Supreme Court of Ohio would endorse their proposed burden shifting framework, if the question was presented. Thus, Plaintiffs have failed to show as a matter of law

15

that Ascent bears the burden of proving the reasonableness of the post-production deductions. Plaintiffs' Partial Motion for Summary Judgment (ECF No. 71) is **DENIED** on this issue.

### II. Plaintiffs are not entitled to summary judgment on their accounting claim.

Count One of the Amended Complaint asserts a claim for an accounting under Ohio law. (ECF No. 21, ¶¶ 135–38.) According to Plaintiffs, their leases contained a contractual right to an accounting, and Ascent has refused to provide one. (ECF No. 71, PageID 1396–1400.) Even if the Court finds no contractual right to an accounting, Plaintiffs argue that they are entitled to an accounting as an equitable remedy. (*Id.*) But, in a footnote, Plaintiffs clarify that they "do not request summary judgment on the equitable accounting claim at this time." (*Id.* PageID 1400, n.5.)

A cause of action for accounting seeks a "determination by a court of what may be due to the respective parties as a result of the relationship between them." *Sabre Energy Corp. v. Gulfport Energy Corp.*, No. 2:19-cv-5559, 2021 U.S. Dist. LEXIS 124013, at *11 (S.D. Ohio July 2, 2021) (Graham, J.) (quoting *Moore v. Sweda*, 499 N.E.2d 371, 373 (9th Dist. Ohio Ct. App. 1985)); *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) ("An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another.").

A demand for an accounting normally operates as a remedy, rather than a standalone action. *Mark Termini Assocs. v. Klutch Sports Grp., LLC*, No. 1:24 CV 1068, 2024 U.S. Dist. LEXIS 200616, at *17–18 (N.D. Ohio Nov. 5, 2024) (citing *Moore Fam. Trust v. Jeffers*, 225 N.E.3d 548, 559 (7th Dist. Ohio Ct. App. Sept. 28, 2023)). But "Ohio law recognizes a cause of action for accounting in royalty disputes arising from oil and gas leases." *Cunningham*, 351 F. Supp. 3d at 1064 (collecting Ohio cases). That said, when there is an adequate remedy at law, Ohio courts have consistently held that an equitable remedy is improper. *Id.* at 1065 (citing *McNulty v. PLS*

*Acquisition Corp.*, 2002-Ohio-7220, ¶ 80 (8th Dist. Ohio Ct. App. 2002)); *see also Phillippi v. Jim Phillippi, Inc.*, No. 2:07-cv-916, 2009 U.S. Dist. LEXIS 66169, at *4 (S.D. Ohio June 26, 2009) (Holschuh, J.) (quotation omitted) (holding that to prevail on an equitable accounting claim, the plaintiff must show that other legal remedies are inadequate).

Since Plaintiffs do not move for summary judgment on the equitable accounting claim, the Court confines its analysis to the breach of contract claim for an accounting. To prove a breach of contract claim, Plaintiffs must prove the existence of a contract, performance by Plaintiffs, breach by Ascent, and damage or loss to Plaintiffs. *See Atlas*, 2021 U.S. Dist. LEXIS 56630, at *13 (citing Ohio law). The rights of the parties in an oil and gas lease case are determined by the terms of the written instrument. *Harris v. Ohio Oil Co.*, 48 N.E. 502, 505 (Ohio 1897). Neither party, however, asserts that the leases included language that expressly gave Plaintiffs a right to an accounting.

Instead, Plaintiffs argue that Ascent's duty to provide an accounting is implied in the contract by the implied covenant of good faith and fair dealing. (ECF No. 71, PageID 1398–99.) To support this argument, Plaintiffs contend that this Court held in *Cunningham* that the implied covenant of good faith and fair dealing applied in oil and gas cases and included the right to an accounting. (*Id.* PageID 1398 (citing *Cunningham*, 351 F. Supp. 3d at 1065–66).) This is an incorrect reading of the Court's prior decision.

To be sure, the Court held open the possibility that the implied covenant of good faith and fair dealing could apply to an oil and gas lease. *Cunningham*, 351 F. Supp. 3d at 1065–66 (citing *Yoder v. Artex Oil Co.*, 2014-Ohio-5130, ¶¶ 51–52 (5th Dist. Ohio Ct. App. 2014)). But the Court did not conclude, as Plaintiffs suggest, that the implied covenant of good faith and fair dealing included a right to an accounting. *Id.* As the Court explained, oil and gas leases are contracts and every contract under Ohio law contains an implied covenant of good faith and fair dealing. *Id.* The

17

covenant requires that the parties are honest and act reasonably in the enforcement of the contract; it "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citations omitted). Because all contracts under Ohio law contain this covenant, logically, it is possible the oil and gas leases also include such a covenant. *Id.* (reasoning that the Court could not say, as a matter of law, that the implied covenant did *not* apply). But the Court is not persuaded that the implied covenant of good faith and fair dealing also includes, as a matter of law, a right to an accounting. *See id.*

Plaintiffs focus on the phrase "reasonableness in the enforcement" to argue that they have an implied right to an accounting "because it would be unreasonable to force them into litigation whenever they want to know if an[] oil and gas company is being honest." (ECF No. 71, PageID 1399.) But Plaintiffs cite no case law to support this proposition, or the broader proposition that the implied covenant of good faith and fair dealing includes a right to an accounting. (*See id.*)

If the right to an accounting is not implied in the contract, or included in the leases, as this Court has found, then Court cannot conclude that the parties' agreements included a right to an accounting. Without showing Ascent agreed to provide an accounting, either by implied covenant, or through express contractual language, Plaintiffs cannot establish the first element of their breach of contract claim—the existence of an agreement. *See Atlas*, 2021 U.S. Dist. LEXIS 56630, at *13. Since Plaintiffs cannot prove the first element of their breach of contract claim, they cannot prove that no genuine issues of material fact exist. Accordingly, the Partial Motion for Summary Judgment (ECF No. 71) must be **DENIED** on this issue.

## CONCLUSION

For the reasons above, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 71) is **DENIED**.

This case is to remain open.

**IT IS SO ORDERED.**

| | |
|---|---|
| <u>**6/20/2025**</u><br>**DATE** | <u>**s/Edmund A. Sargus, Jr.**</u><br>**EDMUND A. SARGUS, JR.**<br>**UNITED STATES DISTRICT JUDGE** |