**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN CHRISTOPHER EATON AND CYNTHIA EATON, ET AL. | Case No. 2:19-cv-03412 |
| | |
| Plaintiffs, | JUDGE EDMUND A. SARGUS, JR. |
| | |
| v. | MAGISTRATE JUDGE CHELSEY M. VASCURA |
| | |
| ASCENT RESOURCES - UTICA, LLC, | |
| | **EXPEDITED CONSIDERATION REQUESTED** |
| Defendant. | |
| | **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**
**GOVERNING DEFENDANT ASCENT'S COMMUNICATIONS WITH AND PLANNED PAYMENTS TO CLASS MEMBERS**

Plaintiffs Brian and Cynthia Eaton and Cunningham Property Management Trust, by counsel and pursuant to Fed. R. Civ. P. 23(d), hereby respectfully move this Court for a Protective Order governing Defendant Ascent Resources – Utica, LLC's communications with and planned payments to the Class Members for the reasons that are set forth in Plaintiffs' Memorandum in Support of this Motion, which is attached hereto and incorporated by reference.

Expedited consideration of this Motion is requested to preclude Ascent from engaging in improper communication with and payments to the Class Members without court approval.

A proposed order for this Motion has been submitted in accordance with Court policy. (Attached as Exhibit 1.)

     *s/ Ethan Vessels*
     Ethan Vessels (0076277), Trial Attorney
     FIELDS, DEHMLOW & VESSELS
     A LIMITED LIABILITY COMPANY
     309 Second Street
     Marietta, Ohio 45750
     (740) 374-5346 (telephone)

-2-

(740) 374-5349 (facsimile)
ethan@fieldsdehmlow.com

Mark H. Troutman (0076390)
Shawn Judge (0069493)
**GIBBS MURA LLP**
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
(510) 350-9700 (telephone)
(510) 350-9701 (facsimile)
mht@classlawgroup.com
skj@classlawgroup.com

*Attorneys for Plaintiffs and the Certified*
*Classes*

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION

The Court granted supplemental briefing on how *The Grissoms, LLC v. Antero Res. Corp.*, 133 F.4th 605 (6th Cir. 2025), impacts Plaintiffs' pending motion for partial summary judgment on the market enhancement clause ("MEC") leases. (June 20, 2025 Order, ECF No. 134.) Thereafter, on October 3, 2025, Defendant Ascent Resources – Utica, LLC filed a supplemental brief in which Ascent stated that it had unilaterally redefined the market enhancement clause subclass in Subclass (d) and that it "is in the process of issuing supplemental royalty payments" to the redefined class members that would "nullify" the Class claims and moot Subclass (d). (Def.'s Suppl. Br., ECF No. 141 at PageID 4070, 4076.) Ascent has submitted a declaration from the Vice President of Land Administration at Ascent Resources, LLC (Ascent's parent company) in which she "estimate[s] that by the end of November 2025, the supplemental royalty payments will be completed." (Matlock Decl., ECF No. 141-1 at PageID 4081 ¶ 9.)

The reimbursement-for-prior deductions component of Ascent's plan is unlawful. The law and justice demand that only this Court—not a defendant—evaluate, supervise, and approve the disposition of all class claims and regulate relevant communications between a defendant and class members. Accordingly, Plaintiffs request that the Court issue a Protective Order preventing Ascent from implementing that portion of its stated plan and from otherwise communicating with the Class Members regarding the prior royalties in dispute under the Class claims.

### II.  EXPEDITED CONSIDERATION REQUESTED

S.D. Ohio Civ. R. 7.2(a)(2) provides a default briefing schedule of twenty-one days after service of a motion for filing a memorandum in opposition and an additional fourteen days from service of the memorandum in opposition for filing a reply memorandum. Accordingly, the default

date a motion becomes ripe is thirty-five days from the date a motion and its memorandum in support are served.

As noted above, Ascent has stated that it will complete its payment and nullification plan by the end of November 2025. Because the default briefing schedule and the end of Ascent's plan will essentially coincide, more immediate consideration is necessary to prevent the harm discussed herein from occurring.

S.D. Ohio Civ. R. 7.1(b)(3) provides that "[t]he Court may, for good cause shown, provide for an early hearing on any motion with or without the filing of memoranda by the parties." Plaintiffs request an expedited hearing date without additional pre-hearing briefing. "Good cause" exists to support this request because in the absence of expedited judicial action, Ascent will continue to implement its plan, Class Members may receive communication from Ascent about that plan, and/or Ascent may issue payments directly to Class Members in contravention of the law (discussed below), which would be a rejection of the Court's lawful mandate to supervise this litigation and to protect the Class Members and would inject unnecessary confusion and chaos into what should be an orderly, logical process.

Alternatively, if the Court prefers additional briefing prior to a hearing, Plaintiffs request that the Court proceed under S.D. Ohio Civ. R. 1.1(c) and order that the default briefing schedule set forth in Rule 7.2(a)(2) does not apply here, set an expedited briefing schedule and hearing date, and prohibit Ascent from communicating with the Class Members regarding the past royalties and effectuating its royalty repayment plan until the Court issues a decision on the instant motion. Plaintiffs also request that the Court enter an order recognizing that if any payment to a Class Member has already issued, then the acceptance or receipt of such money shall not be deemed to

prevent any recipient Class Member from continuing as a Class Member to pursue unrealized, remaining relief.

### III. ORAL ARGUMENT REQUESTED

S.D. Ohio Civ. R. 7.1(b)(2) permits a party to apply to the Court for oral argument on any motion "if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." Plaintiffs request oral argument on the instant motion. The legal issues presented by the motion—the scope of the Court's duty, its obligation to protect the Class Members, the need to guard against the injection of needless confusion, and the requirements that Ascent respect and adhere to the rules designed for the "just, speedy, and inexpensive determination" of class action under Federal Rules of Civil Procedure 1 and 23—all present sufficiently complex issues that oral argument would help identify and flesh out for the Court.

### IV. LAW AND ARGUMENT

#### A. Standard Involved & Why a Protective Order is the Correct Mechanism

Federal Rule of Civil Procedure 23(d) provides that a district court may issue orders that "determine the course of proceedings or prescribe measures to prevent undue repletion or complication in presenting evidence or argument," " require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of . . . any step in the action," "impose conditions on the representative parties," or "deal with similar procedural matters."

Given the potential for problematic communications, district courts have both a duty and broad authority under Rule 23 of the Federal Rules of Civil Procedure to regulate communications between a defendant and putative class members even before class certification. *See, e.g., Gulf Oil*

*Co. v. Bernard*, 452 U.S. 89, 101 ("The district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 761 (N.D. Ohio 2010) ("While the facts of *Gulf Oil* dealt with limiting communications between *plaintiff's counsel* and prospective class members, courts have applied its rationale to communications between *defendant* or *defense counsel* and prospective class members"). This duty and authority extends to communications after class certification has occurred. *See Friedman*, 730 F. Supp. 2d at 761 (noting that the Sixth Circuit has recognized *Gulf Oil* applies to communications with class members and putative class members); *Reed v. American S.S. Co.*, 682 F. Supp. 333, 335, 338-39 (E.D. Mich. 1988) (applying *Gulf Oil* standard post-certification of class). Similarly, given the potential for problems caused by a defendant's contemplated conduct directed toward class members, the Court's Rule 23(d) authority encompasses prohibiting not just the targeted communications but also the unilateral, unapproved payments.

Although a defendant may have truthful and non-coercive contact with class members, "judicial intervention is warranted when communications pose 'a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841(JPO)JCF), 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015) (internal quotations omitted), *vacated by Agerbrink v. MSA Models*, No. 14 Civ. 7841 (JPO)(JCF), 2017 WL 4876221 (S.D.N.Y. May 23, 2017) (vacating restrictions imposed on communications following amendment of the complaint)). *See also Oconner v. Agilant Solutions, Inc.,* 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (recognizing applicable standard post-vacatur). Thus, "[a] district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly

attempts to encourage class members not to join the suit." *Id.* at *7 (collecting cases); *accord In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005) (courts may limit communications that are misleading—including because they "omit[ ] critical information"—that "threaten to create confusion and to influence the threshold decision whether to remain in the class," that "'seek or threaten to influence the choice of remedies,'" or that otherwise "abuse the rights of members of the class" (collecting cases)). Such a restriction on communication "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101-02. Notably, a district court need not, however, wait for actual harm to occur. *See, e.g., In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) ("Rule 23(d) does not, however, require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" (citing *Gulf Oil*, 452 U.S. at 104)).

The correct mechanism through which to exercise the Court's supervisory authority here is a protective order. Although usually addressing discovery limitations, a protective order is a "court order prohibiting or restricting a party from engaging in a legal procedure (esp. discovery) that unduly annoys or burdens the opposing party." Black's Law Dictionary. *See also Jackson v. U.S.*, No. 3:09-cv-26-J-34TEM, 2009 WL 2436577, at *2 (M.D. Fla. 2009). Accordingly, in the context of class actions, courts such as this Court have entertained emergency protective orders to force a defendant to cease certain activities. *See, e.g., Lewis v. Huntington National Bank*, 789 F. Supp. 2d 863 (S.D. Ohio 2011). In *Lewis*, the Court issued an emergency protective order, order to cease and desist, and order for supervised notice, specifically adopting such an order as the appropriate vehicle rather than "the framework applied in motions for preliminary injunction." *Id.* at 869.

**B.      Ascent's Change in Interpreting, Categorizing, and Treating Hundreds of Leases Raises Multiple Problems.**

Six years after the Eatons filed their lawsuit, Ascent has unilaterally declared that it (and only it) has decided which leases are identical or sufficiently similar to the *Grissoms* lease to constitute Market Enhancement Clause leases.  Ascent then states that it will refund all the wrongfully retained gathering, compression, processing, and related costs to those members of Subclass (d)—presumably back to when Ascent first started taking these deductions. The case becomes "moot" in Ascent's own judgment.

There are multiple problems with this plan.

First, Ascent seeks to unilaterally redo class certification. The company has decided that only *some* of the leases it previously interpreted and expressly categorized as "market enhancement" qualify for such treatment. Ascent asserts that only 45 leases, with 76 corresponding owners, meet this definition—which this Court is asked simply to trust as correct. Ascent had classified over 800 owners as having "market enhancement" leases. Excluding those with arbitration clauses, there remain over 350 "market enhancement"-coded payees.[1]

Second, Ascent's reclassification scheme seeks to inexplicably place the burden on Plaintiffs of *defending* class certification when the burden is on Ascent to demonstrate why class certification should be reconsidered. Ascent does not identify which members of Subclass (d) it has excluded, nor why. Ascent merely "proposes that Plaintiffs submit to the Court within 30 days any additions to Ascent's list of leases." (ECF No. 141 at PageID 4068.) This defies this Court's

---

[1]      *See* Opinion and Order, ECF No. 52 at PageID 1314: "Ascent contends that 330 of the approximately 670 leases in Subclass (d) and (e) contain arbitration provisions." (Additional leases were negotiated after 2021, increasing the 670 number.)

Order that certified the Class to include all lessors whom Ascent itself coded as "market enhancement."

Third, Ascent had ample opportunity to argue that it has misinterpreted, miscategorized, and mistreated the leases it designated as MEC leases in Subclass (d) before class certification. Only now, after losing certification, after failing in its interlocutory appeal on certification, and after class notices have been sent does Ascent revisit its leases. Ascent's counsel's purported "new" findings regarding those leases may or may not be *newly acquired*—Plaintiffs have had no opportunity to vet that assertion—but the leases themselves are hardly *new evidence* to warrant reconsidering certification. "'[N]ew evidence' for reconsideration purposes does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Reynaldo Reyes on Behalf of Himself v. Zions First Nat'l Bank*, No. 10-345, 2016 WL 913099, at \*2 (E.D. Penn. Mar. 9, 2016) (quoting *Howard Hess Dental Labs. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010)).

Fourth, Ascent does not explain how it can unilaterally pay and extinguish any claim given that certification has occurred and given that Ascent lacks any legal mechanism that permits its plan. Even assuming that Ascent could explain away those insurmountable hurdles, Ascent fails to disclose how much will be refunded and does not offer to bind itself to any ongoing judgment to prevent these charges from being deducted again. Restated, Ascent seeks to evade the Court's supervisory obligations while concurrently concealing critical information from the Court to enable judicial oversight.

If Ascent believed that this Court's definition of Subclass (d) includes lessors who should not recover, then Ascent could have moved this Court to modify the class definition. *See* Fed. R.

Civ. P. 23(c)(1)(C). Instead, four years after class certification, after appealing class certification to the Sixth Circuit,  and after demanding that Notice (to which Ascent assented) be sent to the Class,[2] Ascent asserts that the Class is over-inclusive and *has unilaterally decided to refund* only the portion it deems sufficient to only those lessors it deems qualify for relief. The Court should not permit Ascent to evade every legal check that exists to curb such conduct, including having to litigate the standard for changing the class definition and the obvious issue of estoppel.

### C.      Grounds for the Motion

#### 1.      Federal Rule of Civil Procedure 23 prohibits a defendant from unilaterally disposing of Class claims as Ascent plans.

Ascent's plan to attempt mooting the Subclass (d) claims is impermissible. It violates Federal Rule of Civil Procedure 23. It usurps the Court's dual role to protect the Class and to ensure that justice is done. And it upends conventions of federal class action litigation practice.

First, a defendant such as Ascent cannot redefine a certified class at its whim. "Once a class is certified, the parties can be expected to rely on it and conduct  discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause." *In re Polyurethane Foam  Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 4459636, at *2 (N.D. Ohio 2015) (citing *Cook v. Rockwell Int'l Corp.*, 181 FRD 473, 477 (D. Colo. 1998) (quoting Manual For Complex Litigation 3d at § 30.18 (1995))). Ascent has not attempted to meet its burden of establishing good cause and has not sought judicial modification of the relevant class definition as required by law. Instead, Ascent purports to have

---

[2]      *See* ECF No. 109, Plaintiffs' Motion for Approval of Notice of Certification of Classes: "Defendant . . . does not oppose the form of the notice." The approved notice stated, "Subclass (d): All persons or entities for which Ascent has classified the lessor as having a "market enhancement clause" lease who have had deductions for "processing" expenses taken from royalty payments by Ascent."

altered the Class and seeks to place the burden on Plaintiffs of demonstrating any lease and landowner that were improperly excluded.

Second, a defendant such as Ascent cannot unilaterally "nullify" Class Members' claims. Ascent states that it "is already in the process" of its nullification scheme. Even in *pre-certification* stages of class actions, a defendant cannot "moot" a case simply by issuing refunds to all potential class members. *See, e.g., Reynolds v. Lifewatch, Inc.*, 136 F.Supp.3d 503, 513-14 (S.D. N.Y. 2015) (holding refund offer insufficient to create mootness grounds for too many unresolved issues of fact remaining: promise of a refund was a promise, with no class members having received a refund; nothing suggested defendants even know whom to compensate or how much each putative class member might claim; refund proposal had no on declaratory and injunctive relief claims; and plaintiffs free to reject a voluntary refund program in order to pursue their class claims).

***After class certification has occurred***, even the mooting of a named plaintiff's claim does not moot the action because the certifying court has jurisdiction to hear the merits of the action if a case or controversy between a defendant and any class member exists. *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016). *See also Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) ("Admittedly, special mootness rules exist for class actions. *Once a class is certified,* the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists.").

After certification, the Court has *exclusive authority* to approve any disposition of the Class claims. *See* Fed. R. Civ. P. 23(e). *See also Wright v. Premier Courier, Inc.*, Nos. 2:16-cv-420, 2:17-cv-654, 2018 WL 3966253 (S.D. Ohio 2018); *Int'l Union, United Auto., Aerospace*

*& Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Some "courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). To permit Ascent to forcibly settle claims by distributing money to members of a certified class would upend the entire class action process contemplated by Rule 23.

Federal courts have routinely recognized a district court's function as the ultimate "gatekeeper" to claim resolution. *See, e.g., Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Ca. 2018). The Third Circuit Court of Appeals has explained that "[u]nder Fed.R.Civ.P. 23(e), a district court's primary role is to determine whether the settlement is fundamentally fair, reasonable, and adequate" and that "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). Such tenets are black letter law among the Circuits. *See, e.g., 1988 Trust for Allend Children Dated 8/8/88 b. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

### 2. Absent judicial supervision, the risks of undiscovered inadvertent error or even fraud are too great to allow Ascent to implement its plan.

Ascent's attempt and manipulating the class action process is dangerous given the risk of fraud or even a simple mistake: without judicial oversight, there is no way of knowing if Ascent would pay even the 76 lessors that Ascent believes to qualify full and fair compensation. Moreover, the hallmarks of how a resolution is tested in a class action settlement would be wholly absent. There would be no confirmatory discovery, no arm's length negotiation, no vetting, and no testing of the company's unilateral decision making. Ascent would effectively be paying what it wants

-12-

and then declaring entire claims resolved. Such unilateral, involuntary resolution is neither the mandated process under the Civil Rules nor the path to any discernible form of justice.

To enable the Court to assess Ascent's plan, the Court should exercise its supervisory powers to order an accounting. *See Ortiz v. Fibreboard Corp.* 527 U.S. 815, 830 (1999). This Court has never disclaimed its prior holding that Ascent could be required to provide an equitable accounting to Plaintiffs, and that issue remains untouched in this litigation. *See* Opinion and Order, ECF No. 135 at PageID 4042 (leaving untouched whether an equitable right to an accounting exists); *see also Highman v. Gulfport Energy Corp.*, No. 2:20-cv-1056, 2020 WL 6204344, at *4 (S.D. Ohio 2020). But whether Plaintiffs have a right to an accounting is distinct from whether the Court can and should order an accounting as a matter of its supervisory authority. The Court should know what Ascent is not telling it.

> **3.      Ascent's plan would not moot the Class claims and would only inject confusion and chaos into this litigation.**

Courts have expressly recognized that some communications (and by logical extension, conduct) are misleading if they fail to inform class members of what the class members are possibly giving up. *Friedman*, 730 F. Supp. 2d at 763. Ascent intends for its refund plan to nullify Class claims and create mootness, but that plan would not afford the Class Members the complete relief sought and therefore cannot moot their claims and extinguish their interests. For example, Ascent's plan description does not address necessary *interest* on the unpaid amounts, money beyond the initial royalties that Ascent's conduct has deprived Plaintiffs of for years. Interest is available on a claim for breach of contract under Ohio law. *See Epic Fiber Underground Constr., LLC v. Utilities Servs. Radius,* No. 1:24-cv-00720, *LLC*, 2025 WL 2842421, at *3-*4 (S.D. Ohio June 11, 2025); *J-Way Leasing, Ltd. V. American Bridge Co.*, No. 1:07 CV 3031, 2010 WL 703077, at *1-*3 (N.D. Ohio Feb. 23, 2010).

Also absent from Ascent's discussion of its plan is that the Named Plaintiffs (and the Class Members) have an economic interest in disposition as a class, which would shift litigation costs onto class members that Ascent's nullification plan does not extinguish. *See Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 705 (6th Cir. 2009). Among the reasons Ascent's payment to the Classes would not moot this action is because such payment would not pay the full amount of costs and fees incurred by Plaintiffs. *See id.* at 705-06.

Ascent's plan would also create confusion and chaos among the Class Members. Previously, Ascent called for, and the Court ordered, that Notice be sent to the Class following certification of the Class and the five Subclasses. The language of the Notice *was not opposed by Ascent* and *was approved by the Court approved* told the Class Members the following:

> In a class action, the Court or a jury resolves the issues for all Class Members and Subclass Members, except for those people or entities who choose to exclude themselves from the Class and Subclasses.

(Notice, ECF No. 109-1 at PageID 2965.) The Notice also told the Class Members the following:

> No money is available at this time. The Court has not ruled in favor of Plaintiffs or Ascent, and the parties have not reached any settlement. Any payments that at some time in the future may be available for Class Members and Subclass Members will only occur if the Court awards a judgment in favor of Plaintiffs or Plaintiffs and Ascent reach a settlement.

(*Id.* at PageID 2966 (emphasis added).)

**In other words:** Plaintiffs, Ascent, and the Court expressly told the Class Members that any resolution of the Class claims can come ***only*** from a *judgment* ***or*** a *settlement*.

Ascent's plan would contradict that communication and create confusion among the Class Members. Ascent is planning on making an end-run around the very process that it previously recognized was the only means by which disposition of the Class claims could occur. Ascent is

-14-

attempting to circumvent the very process that it previously agreed to tell the Class Members was the only means by which disposition of the Class claims could occur.

The Court should exercise its authority to prevent "a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Agerbrink*, 2015 WL 6473005, at \*3. *See also Oconner,* 444 F. Supp. 3d at 601. The Court should grant the motion.

### 4. A protective order need not prevent Ascent from ceasing its improper deductions going forward and from escrowing all amounts improperly deducted with the Court for eventual payment as part of a Court-approved resolution of the Class claims.

The requested Protective Order would leave untouched Ascent's ability to voluntarily cease taking improper deductions going forward. The company can do that at any time, even without the approval of the Court. The Protective Order would also not disturb Ascent's ability to ask the Court to accept the "supplemental royalty payment" amounts into a court-supervised escrow fund, to be held until a judgment or settlement provides for the fair distribution of all appropriate funds to the Class Members—with the Court having determined the appropriateness of the funds to be distributed and how they will be assessed, allotted, and distributed. The requested Protective order is "the minimum necessary to protect the rights" of the Class Members "while avoiding limiting defendant's statutory or constitutional rights." *Friedman*, 730 F. Supp. 2d at 767. The Protective Order is "drawn as narrowly and least imposingly as possible" to prevent only the problems discussed herein—impermissible departures from the Civil Rules and the unwarranted injection of confusion and chaos into these proceedings. *Id.* Finally, the Protective Order "is to last only as long as is required for protection of the [Class Members'] rights in this regard." *Id.* In other words, it would expire upon judgment or judicial approve of a settlement.

V.    **CONCLUSION**

Plaintiffs respectfully request that the Court grant the instant motion on an expedited basis and enter an emergency protective order:

(1) prohibiting Ascent from engaging in any communications with the Class Members regarding the disputed royalties at issues in this litigation, including the payment or "refund" of such royalties;

(2) prohibiting Ascent from paying or "refunding" the royalties at issue directly to the Class Members without the supervision, approval, and direction of the Court;

(3) ordering Ascent to provide a full accounting of the amounts it now seeks to refund to the members of Subclass (d); and

(4) ordering, because it is unclear whether any payment to a Class Member has yet issued, that the acceptance or receipt of such money would not prevent any Class Member from continuing as a Class Member to pursue unrealized, remaining relief. *Cf. Rogers v. WEBstaurant Store, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 3058882, at *6 (W.D. Ky. June 20, 2018).

Respectfully submitted,

s/ Ethan Vessels
Ethan Vessels (0076277), Trial Attorney
FIELDS, DEHMLOW & VESSELS
A LIMITED LIABILITY COMPANY
309 Second Street
Marietta, Ohio 45750
(740) 374-5346 (telephone)
(740) 374-5349 (facsimile)
ethan@fieldsdehmlow.com

-17-

Mark H. Troutman (0076390)
Shawn Judge (0069493)
**GIBBS MURA LLP**
1554 Polaris Parkway, Suite 325
Columbus, Ohio 43240
(510) 350-9700 (telephone)
(510) 350-9701 (facsimile)
mht@classlawgroup.com
skj@classlawgroup.com

*Attorneys for Plaintiffs and the Certified
Classes*

-18-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 21, 2025, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/ Ethan Vessels_

Ethan Vessels (0076277)
Trial Attorney
